**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

BETTY BAGLEY,

                Plaintiff,

vs.                                       Case No. 3:08-cv-591-J-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

_____/

## OPINION AND ORDER[1]

### I. Status

      Betty Bagley ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits and supplemental security income. Her alleged inability to work is based on the physical impairment of "lumbar degenerative disc disease status post multiple fusions," which results in severe back, neck, and lower extremity pain. Transcript of Administrative Proceedings ("Tr.") at 17; Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. No. 15; "Pl.'s Mem.") at 1. On August 17, 2004, Plaintiff filed a claim for disability insurance benefits and supplemental security income, alleging an onset date of September 2, 2003. Tr. at 15, 93, 535. On October 26, 2006, the Administrative Law Judge ("ALJ") held a hearing at which Plaintiff testified. Tr. at 448-87. During the October 26, 2006 hearing, the

---

[1]   The parties consented to the exercise of jurisdiction by a United States Magistrate Judge, <u>see</u> Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 16), and the Order of Reference was entered on November 13, 2008 (Doc. No. 17).

ALJ determined that he required the testimony of a medical expert ("ME"). Tr. at 481, 483-84. The hearing was continued to obtain such testimony. Tr. at 483-84. On January 25, 2007, the hearing was reconvened, but it again had to be continued because the medical record had not been sent to the ME. Tr. at 488-98. On June 14, 2007, the hearing was reconvened, and three individuals testified: (1) Bruce Witkind, M.D. ("Dr. Witkind"), a nonexamining physician; (2) Jack Turner, a vocational expert; and (3) Plaintiff. Tr. at 499-564. After the hearing was concluded, Claudio E. Vincenty, M.D. ("Dr. Vincenty"), one of Plaintiff's treating physicians, submitted a letter dated July 26, 2007 in response to Dr. Witkind's testimony. Tr. at 446-47. On November 1, 2007, the ALJ issued a decision finding Plaintiff not disabled. Tr. at 15-25. On April 10, 2008, the Appeals Council denied Plaintiff's request for review. Tr. at 4-7. On June 12, 2008, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1) seeking review of the Commissioner's final decision. Plaintiff has exhausted the available administrative remedies, and the case is properly before the Court.

Plaintiff raises two issues: (1) whether the ALJ "erred when he provided controlling weight to the medical opinion evidence from a nonexamining physician while completely disregarding the medical opinion evidence from [Plaintiff]'s treating physician[, Dr. Vincenty]";[2] and (2) "whether the ALJ erred by failing to address relevant and material evidence[; that is, Dr. Vincenty's July 26, 2007 letter]." Pl.'s Mem. at 1. After a thorough review of the entire record and consideration of the parties' respective memoranda, the

---

[2] In connection with Plaintiff's arguments regarding the weight given to Dr. Witkind's residual functional capacity opinion, Plaintiff contends the ALJ did not follow proper procedures in selecting Dr. Witkind to testify. Pl.'s Mem. at 21-23. This argument is also addressed infra pp. 17-20.

undersigned finds that the ALJ failed to articulate adequate reasons supported by substantial evidence for discounting the medical opinion of Dr. Vincenty, and the ALJ failed to address Dr. Vincenty's July 26, 2007 letter. Therefore, the Commissioner's final decision is due to be reversed and remanded for further proceedings.

## II. The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the plaintiff (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The ALJ performed the required five-step sequential inquiry. Tr. at 15-25. At step one, the ALJ established Plaintiff has not engaged in substantial gainful activity since September 2, 2003 (the alleged onset date). Tr. at 17. At step two, the ALJ found Plaintiff suffers from the following severe impairments: "lumbar degenerative disc disease status post multiple fusions." Tr. at 17. At step three, the ALJ stated Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 18.

_____

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

The ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work, except that Plaintiff requires the ability to alternate her position between sitting and standing and walking every forty-five minutes. Tr. at 19. Plaintiff can occasionally crouch, bend, and climb stairs, but she cannot crawl. Tr. at 19. Plaintiff is restricted from working in and around unprotected heights. Tr. at 19. At step four, the ALJ observed that Plaintiff is unable to perform any past relevant work. Tr. at 22-23. However, the ALJ established at step five that jobs exist in significant numbers in the national economy that Plaintiff can perform, considering her age, education, work experience, and RFC. Tr. at 23-24. The ALJ explained the transferability of Plaintiff's job skills is not material to the determination of disability because the Medical-Vocational Rules support a finding that Plaintiff is not disabled regardless of transferable job skills. Tr. at 23-24. The ALJ concluded Plaintiff has not been under a disability from September 2, 2003 (the alleged onset date) through the date of the decision. Tr. at 24-25.

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff contends that the ALJ improperly rejected Dr. Vincenty's opinion in favor of Dr. Witkind's opinion, and that the ALJ failed to address Dr. Vincenty's July 26, 2007 letter. Pl.'s Mem. at 14-25. Because these issues are intertwined, the undersigned addresses them together.

The Regulations instruct ALJs how to weigh the medical opinions[4] of treating physicians[5] properly. See 20 C.F.R. § 404.1527(d). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a

---

[4] Medical opinions are statements from physicians that reflect judgments about the nature and severity of the claimant's impairment, including symptoms, diagnosis, prognosis, and what the claimant can still do despite the impairment. 20 C.F.R. § 404.1527(a)(2).

[5] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2). When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician. Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence, (2) the evidence supports a contrary finding, or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004); see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence). The ALJ must "state with particularity the weight he [or she] gave the different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987); see also MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). "The opinions of nonexamining, reviewing physicians . . . when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence."

Sharfarz, 825 F.2d at 280; see also O'Bier v. Comm'r Soc. Sec. Admin., 2009 WL 1904706, at *2 (11th Cir. July 2, 2009); Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995) (stating that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining or a treating physician") (emphasis in original).

Generally, a nonexamining physician's opinion is given less weight than that of a treating or examining physician. 20 C.F.R. § 404.1527(d)(1). Nevertheless, every medical opinion should be considered in making the disability determination. 20 C.F.R. § 404.1527(d). The same factors are relevant in determining the weight to be given to a nonexamining physician's opinion as are relevant in determining the weight to be given to a treating physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F. R. §§ 404.1527(f), 416.927(f). "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981) (citing 20 C.F.R. § 404.1526 (1980)); see also 20 C.F.R. § 404.1527(d)(2).

**A. Dr. Vincenty's Opinion**

Dr. Vincenty, a specialist in pain management at the Jacksonville Spine Center, began treating Plaintiff in October 2004. Tr. at 282. From October 14, 2004 through June 20, 2007, Plaintiff made approximately thirty visits to Dr. Vincenty, during which time Plaintiff received approximately ninety trigger point injections in her lower back for pain relief. Tr. at 263-77,

312-24, 427-44. In an undated Clinical Assessment of Symptoms form, Tr. at 286-89, and an undated Medical Source Statement of Ability to Do Work-Related Activities (Physical) form, Tr. at 290-93, Dr. Vincenty opined Plaintiff could occasionally and/or frequently lift less than ten pounds. Tr. at 290. Dr. Vincenty stated that in an eight-hour workday, Plaintiff could sit a total of less than six hours and stand and/or walk a total of less than two hours. Tr. at 290. According to Dr. Vincenty, Plaintiff could never climb, crouch, kneel, crawl, balance, or stoop, and she could rarely push or pull. Tr. at 291. Dr. Vincenty explained that Plaintiff would have to shift positions at will from sitting, standing, or walking; she would have to take unscheduled breaks for fifteen to thirty minutes every hour; and she would have to lie down or recline two to three times a day for a period of an hour. Tr. at 288. Dr. Vincenty estimated Plaintiff could be expected to miss more than three days of work per month. Tr. at 289. Dr. Vincenty opined that Plaintiff had environmental restrictions of heights, moving machinery, extreme temperatures, chemicals, dust, and noise. Tr. at 291. Although it is undated, the assessment is retrospective to his initial evaluation of Plaintiff on October 14, 2004 and indicates Plaintiff's condition could be expected to last at least twelve months. Tr. at 288-89.

**B. Dr. Witkind's Opinion**

The ALJ decided to consult a nonexamining physician, Dr. Witkind, to testify at the June 14, 2007 hearing and to assist the ALJ with understanding the medical evidence in the record. Tr. at 477. Dr. Witkind is a board certified neurosurgeon. Tr. at 34, 477. The Commissioner has designated Dr. Witkind as someone qualified to give a medical opinion in a case like Plaintiff's. Tr. at 505.

At the hearing, the ALJ and Plaintiff's attorney reviewed the medical record with Dr. Witkind. Tr. at 506-33. After reviewing the record, Dr. Witkind opined that Plaintiff's previous surgeries had been successful, and there was "no pseudoarthrosis or slippage present." Tr. at 514. Dr. Witkind observed that "neurological examination has been continually normal . . . ." Tr. at 514-15. Dr. Witkind found that MRIs of Plaintiff showed "normal postoperative findings in the thoracic spine and lumbar spine . . . ." Tr. at 515.

The ALJ questioned Dr. Witkind with respect to Dr. Vincenty's RFC opinion. Tr. at 512-14, 518-20. Specifically, the ALJ asked Dr. Witkind the following:

> Q:   I mean they've used the term–particularly Dr. Vinc[enty]–and I'd like to get your take on that. What is a failed back syndrome? Is there any such thing?
> A:   Well, a failed back syndrome is a–is just–is simply a catchall term that means that the patient is complaining of pain after the surgery. It really doesn't mean much at all.

Tr. at 520.

The ALJ also asked Dr. Witkind whether he agreed with Dr. Vincenty's opinion with respect to Plaintiff's pain:

> Q:   Would you expect that the evidence based on the fact that you've reviewed it and the various objective findings–I know Dr. Vinc[enty] and the pain management people have described her pain as intractable. Would you agree with that assessment?
> A:   No. Now, the–there was a mention there that she describes the pain as a ten, but the physician states that in his opinion it's more compatible with a five–
> Q:   Okay.
> A:   –which is mild to moderate.

Tr. at 524.

Dr. Witkind further testified that Plaintiff's functional limitations put her at a "sedentary light level fulltime" work capacity, with a maximum lifting level of twenty pounds occasionally

and ten pounds frequently. Tr. at 521. Dr. Witkind stated Plaintiff needs to alternate between standing and sitting in her work activity, and she needs to stand up approximately every forty-five minutes and sit back down. Tr. at 521. Dr. Witkind stated that Plaintiff could climb stairs, but not ladders or ropes, and she could occasionally bend and crouch, but not crawl. Tr. at 521-22. Dr. Witkind testified that Plaintiff's condition does not affect her upper extremities, and her dexterity is without limitation. Tr. at 522. He also testified Plaintiff should not work at heights because it is not advisable for her to climb. Tr. at 523. Dr. Witkind believed that Dr. Vincenty's RFC opinion is not reasonable. Tr. at 514.

### C. Post-Hearing Evidence

After the hearing but before the issuance of the ALJ's decision, on July 26, 2007, Dr. Vincenty submitted a letter to the ALJ in response to Dr. Witkind's testimony. Tr. at 446-47. In the letter, Dr. Vincenty restated Plaintiff's lengthy history of back problems and pain. Tr. at 446-47. After noting Dr. Witkind's opinion with respect to Plaintiff's previous MRIs, Dr. Vincenty emphasized the following:

> This patient has never been diagnosed with "failed back syndrome" as was implied in [Dr. Witkind's] testimony. The patient's diagnosis is postlaminectomy syndrome of the lumbosacral spine as well as degenerative disc disease of the lumbosacral spine with muscle spasms as well as cervicalgia. We have never claimed this patient has "intractable back pain" as we use the visual analog scale system with her current pain levels being approximately 9/10 on a visual analog scale of 1 to 10. This was documented on June 20, 2007.

Tr. at 446.

Dr. Vincenty also pointed out that Plaintiff's "neurological examination[,] which is documented in detail on October 14, 2004, did not demonstrate a normal neurological examination." Tr. at 447. Dr. Vincenty disagreed with Dr. Witkind's assessment of Plaintiff's

ability to work.  Tr. at 447.  Dr. Vincenty indicated that his treatment plan had provided

Plaintiff with some pain relief, but he maintained the opinion that Plaintiff is unable to work

in any capacity.  Tr. at 446.  Dr. Vincenty concluded by stating, based on his long-term

relationship with Plaintiff, that he believed she is not a malingerer is and not capable of

obtaining gainful employment.  Tr. at 447.

### D.  ALJ's Analysis of Physicians' Opinions

In analyzing the opinions of the respective physicians, the ALJ stated the following:

> The undersigned rejects the opinion offered by Dr. Vincenty, the pain management specialist[,] in favor of the opinion offered by Dr. Witkind, the board certified neurosurgeon who testified at the hearing.  Dr. Witkind's assessment of the claimant's limitations is consistent with the objective medical evidence, the claimant's fairly normal activities of daily living, including marrying in 2004 as the claimant testified to; the activities of daily living she reported to the consultative examining psychologist and the Social Security office; and the opinions of the four state agency medical specialists who found the claimant capable of performing the mental and physical demands of some types of work.  The undersigned also affords greater weight to the opinion offered by Dr. Witkind as he had the opportunity to review and study the entire exhibit file, unlike Dr. Vincenty, and for the fact that Dr. Witkind is a spine surgeon and he has much greater medical expertise in the evaluation of claimant suffering such spinal disorders as compared to Dr. Vincenty who treated the claimant primarily for pain management.

> Dr. Vincenty's own notes document the claimant was able to travel to the Florida Keys for a visit.  Dr. Vincenty reported the claimant was assaulted in the Keys and had exacerbation of her pain complaints, however, there is no documentation in Dr. Vincenty's treatment records or elsewhere in the medical evidence of record that the claimant sought emergency room treatment while in the Florida Keys area.  The record documents the claimant waited until she returned to Jacksonville to seek treatment from Dr. Vincenty; this also indicates the claimant's impairment was not as limiting as Dr. Vincenty reported or as the claimant testified.

Tr. at 22.

The ALJ articulated two reasons in attempting to establish good cause for discounting Dr. Vincenty's opinion: (1) Dr. Vincenty's own treatment notes document that Plaintiff was able to visit the Florida Keys and did not immediately seek medical attention after being injured there; and (2) Dr. Vincenty's opinion is contrary to the opinion of Dr. Witkind, whose opinion the ALJ gave great weight. Tr. at 22. With respect to the ALJ's first reason, the fact Plaintiff took a trip to the Florida Keys and waited until she returned to Jacksonville to seek medical treatment is probative of Plaintiff's credibility, not the validity of Dr. Vincenty's opinion regarding the effects of her impairment and corresponding limitations. Therefore, it is not an adequate reason for discounting Dr. Vincenty's opinion.

With respect to the second reason, the ALJ's decision attempted to credit Dr. Witkind's opinion while using Dr. Witkind's opinion to discredit Dr. Vincenty's opinion. Applying the factors identified in 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5)[6] to Dr. Witkind's opinion shows that the ALJ has not articulated a basis for finding that Dr. Witkind's opinion is entitled to "greater" weight than the opinion of Dr. Vincenty. It is evident that Dr. Witkind did not treat or examine Plaintiff. Although the ALJ observed that Dr. Witkind "had the opportunity to review and study the entire exhibit file, unlike Dr. Vincenty," Tr. at 22, it is difficult to understand how Dr. Witkind could assess Plaintiff's complaints of pain without actually examining her. Therefore, the first two factors weigh against Dr. Witkind. Still, Dr. Witkind is board certified in neurosurgery, which weighs in favor of his opinion.

---

[6] Those factors are the length of the treatment relationship and the frequency of examination; the nature and extent of any treatment relationship; supportability; consistency with other medical evidence in the record; and specialization. 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5).

As for the remaining two factors, five aspects of the record indicate Dr. Witkind's opinion is unsupported by or inconsistent with the evidence: (1) Dr. Witkind may have been mistaken as to Dr. Vincenty's diagnosis; (2) Dr. Witkind may have been mistaken as to results from neurological examinations; (3) the record is not adequately developed with respect to Plaintiff's activities of daily living to determine whether they support Dr. Witkind's opinion; (4) it appears Dr. Witkind was unaware that Plaintiff discontinued physical therapy because it was not covered by her insurance; and (5) the ALJ did not explain why the fact Plaintiff was not a candidate for neurosurgery supports Dr. Witkind's opinion.

First, it appears Dr. Witkind may have been under the mistaken impression that Dr. Vincenty had diagnosed Plaintiff with "failed back syndrome," Tr. at 520, and that Dr. Vincenty had described Plaintiff's back pain as "intractable," Tr. at 524. In his July 26, 2007 letter, Dr. Vincenty stated that he had not diagnosed Plaintiff with failed back syndrome, and that he had never claimed Plaintiff had intractable back pain. Tr. at 446. Rather, Dr. Vincenty explained he had actually diagnosed Plaintiff with "postlaminectomy syndrome of the lumbosacral spine as well as degenerative disc disease of the lumbosacral spine with muscle spasms as well as cervicalgia." Tr. at 446. It appears Dr. Witkind's testimony with respect to Dr. Vincenty's opinion was based on a misunderstanding as to what Dr. Vincenty's medical findings actually were. Such misunderstanding suggests Dr. Witkind's RFC opinion may be unsupported by or inconsistent with the evidence. Without a more thorough explanation from the ALJ in this regard, meaningful judicial review is not possible. On remand, the ALJ should reconsider the weight given to Dr. Witkind's opinion and determine

whether Dr. Witkind should have the opportunity to revisit or further explain his opinion in light of Dr. Vincenty's clarification as to the diagnosis.

Second, Dr. Vincenty observed in the July 26, 2007 letter that a neurological examination from October 14, 2004 "did not demonstrate a normal neurological examination," Tr. at 447, which contradicts Dr. Witkind's statement that Plaintiff's neurological examinations had been "continually normal," Tr. at 515. The record does not reflect whether Dr. Witkind's RFC opinion would change in light of the clarification from Dr. Vincenty's July 26, 2007 letter. It appears Dr. Witkind was unaware that at least one neurological examination had not been normal. On remand, the ALJ should determine whether the abnormal neurological examination affects Dr. Witkind's RFC opinion.

Third, the ALJ found that Plaintiff's activities of daily living are consistent with Dr. Witkind's opinion. Tr. at 22. However, the ALJ did not question Plaintiff as to her daily activities during any of the hearings that were held. The ALJ ascertained Plaintiff's daily activities from the personality assessment that was performed by Dr. Lucas on December 6, 2004, Tr. at 217-19, as well as the Function Report form that Plaintiff completed on September 17, 2004 for the Social Security Administration, Tr. at 104-11. Plaintiff told Dr. Lucas that her daily routine included cooking, watching television, and reading; that she "might" make up her bed or do the dishes; that she "may" do leg lifts or "straighten up"; but she did not do laundry. Tr. at 218. On the Social Security form, Plaintiff reported that she could do light house cleaning, laundry, dusting, and dishes, but she could not do any work outdoors. Tr. at 106-07. The daily activities reported in Dr. Lucas's personality assessment are somewhat inconsistent with the activities Plaintiff reported on her Function Report form.

As this case is being remanded for other reasons, the ALJ should inquire into Plaintiff's daily activities to develop a complete record.

Fourth, as indicated by the ALJ, Dr. Witkind "specifically noted the claimant's non-compliance with physical therapy ordered by Dr. Vincenty in 2006." Tr. at 21 (referring to Tr. at 328). However, the ALJ did not address Plaintiff's testimony from the October 26, 2006 hearing that she stopped going to physical therapy because it was no longer covered by her insurance. Tr. at 472. Plaintiff also testified that the physical therapy did not help her condition. Tr. at 472-73. The ALJ ignored Plaintiff's testimony with respect to why she discontinued physical therapy and at the same time, he used her failure to attend physical therapy to bolster Dr. Witkind's opinion.

Fifth, the ALJ observed that Plaintiff "was not a candidate for further neurosurgery per the opinion offered by the neurosurgery department at Shands Hospital." Tr. at 21 (referring to Tr. at 301). The undersigned is unclear why a determination that Plaintiff was not a candidate for further neurosurgery is a reason to credit Dr. Witkind's opinion over that of Dr. Vincenty, and the ALJ offered no explanation for this conclusion. Without a clearer explanation of the ALJ's reasons, meaningful judicial review is not possible.

Therefore, the ALJ did not adequately address evidence indicating that Dr. Witkind's opinion is unsupported by and inconsistent with the record. <u>See</u> 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5). This supports Plaintiff's argument that the ALJ failed to consider certain relevant and material evidence. Pl.'s Mem. at 23-25. The law is clear that the ALJ must consider all evidence in the case record when making a determination of disability. 20 C.F.R. § 404.1520(a)(3); <u>see also</u> <u>Sharfarz</u>, 825 F.2d at 279. Although there

is no rigid requirement that the ALJ specifically refer in his or her decision to every piece of evidence, the ALJ's decision cannot broadly reject evidence in a way that prevents meaningful judicial review.  See <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1211 (11th Cir. 2005).

The ALJ's failure to address Dr. Vincenty's July 26, 2007 letter amounts to a total rejection of what the letter contains.  There are material aspects of Dr. Vincenty's letter that the ALJ should have analyzed in order to allow for meaningful judicial review.  It cannot be determined whether the ALJ considered the letter at all, and the factual issues that the letter raises remain unaddressed.  In such circumstances, it was error for the ALJ to ignore the letter.  Remand is appropriate so that the ALJ may address Dr. Vincenty's July 26, 2007 letter and state with particularity the weight it is given; the ALJ should clearly articulate adequate reasons supported by substantial evidence if the letter is discounted.  See <u>Sharfarz</u>, 825 F.2d at 279-80.

### E.  Weight Given to Dr. Witkind's Opinion

Plaintiff asserts the ALJ improperly gave Dr. Witkind "controlling" weight.  Pl.'s Mem. at 14-17.  Because the case is being remanded due to the ALJ's failure to clearly articulate adequate reasons supported by substantial evidence for discounting the opinion of Dr. Vincenty, it is not necessary to reach this issue.  The undersigned would note, however, that "controlling weight" is defined as a "term used in 20 CFR §§ 404.1527(d)(2) and 416.927(d)(2) to describe the weight [given] to a medical opinion from a treating source that must be adopted."  <u>Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions</u>, SSR 96-2p, 1996 WL 374188, at *2 (S.S.A. 1996) ("SSR 96-2p"); <u>see also</u> <u>Green v. Barnhart</u>, Case No.: 3:05-cv-1106-J-MMH (M.D. Fla. Feb.

29, 2007).  Although opinions from acceptable medical sources may be entitled to great weight, and may even be entitled to more weight than a treating physician's opinion in appropriate circumstances, Plaintiff is correct that opinions from sources other than treating sources can never be entitled to "controlling weight."  Id.  Because the weight afforded to Dr. Vincenty, a treating physician, will likely affect the ALJ's analysis of what weight should be given to Dr. Witkind's opinion, it is appropriate for the ALJ to reanalyze the weight given to Dr. Witkind in a manner consistent with the principles explained herein.

### F.  Selection of the Nonexamining Physician Dr. Witkind

Plaintiff argues the ALJ did not follow the proper procedure in selecting Dr. Witkind.[7] Pl.'s Mem. at 21-23.  It is not required that there be procedural perfection in an administrative law proceeding.  Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988).  Unless the substantial rights of a party are affected by a procedural defect, the ALJ's decision will not be vacated.  Id.  The Commissioner's Hearings, Appeals and Litigation Law Manual ("HALLEX") provides guiding principles for the selection of a medical expert ("ME"):

> When an ALJ determines that ME testimony is needed, the ALJ will inform the claimant and the representative by placing a statement to that effect in the "REMARKS" section of the Notice of Hearing.  The ALJ or designee will, before the hearing, furnish the ME with copies of the pertinent medical reports and written lay evidence. If additional medical evidence is received at the hearing, the ALJ will, if possible, provide it to the ME for review before the ME testifies. . . .
>
> The ALJ or designee must select the ME whose expertise is most appropriate to the claimant's diagnosed impairment(s).  An ALJ may never permit an ME to perform an examination of a claimant. . . .

---

[7]  The undersigned notes Plaintiff had the opportunity to object to the ALJ's choice of Dr. Witkind as the nonexamining expert at the October 26, 2006 hearing, the January 25, 2007 hearing, and the June 14, 2007 hearing, but did not do so.

An ALJ must select an ME who is maintained on any [Regional Office]'s roster to the extent possible. The ALJ or designee must select an ME from the roster in rotation to the extent possible; i.e., when an ALJ selects an ME with a particular medical specialty from the roster to provide expert opinion in a case, that ME will go to the bottom of the roster and will not be called again by that ALJ or any other ALJ in the [Hearing Office] until all other MEs on the roster with that medical specialty are called.

HALLEX, § I-2-5-36(A), (D), available at http://www.ssa.gov/OP_Home/hallex/I-02/I-2-5-36.html (last visited September 29, 2009).

In this case, the ALJ did not state in the Notice of Hearing that he would be calling Dr. Witkind for the June 14, 2007 hearing.  Tr. at 26.  However, the record is clear that at the October 26, 2006 hearing and the January 25, 2007 hearing, the ALJ informed Plaintiff that he would be calling Dr. Witkind to testify.  Tr. at 483, 497.  Plaintiff had actual notice that the ALJ would be calling Dr. Witkind to testify, and the absence of notice in the "REMARKS" section of the Notice of Hearing was not harmful.

The ALJ provided Dr. Witkind with the pertinent medical records and other written evidence for his review prior to his testimony.  The record indicates that Dr. Witkind was able to view the computer disk containing Plaintiff's MRIs during his testimony.  Tr. at 520. Additionally, Dr. Witkind testified that he was able to form a neutral and impartial opinion regarding Plaintiff's condition, and that he was designated by the Commissioner as someone qualified to offer a medical opinion in this type of case.  Tr. at 505.

Plaintiff cites to Keith v. Barnhart, 473 F.3d 782, 788-89 (7th Cir. 2007), in support of her argument that the selection of an ME is only proper if the ALJ follows HALLEX procedure.  Although the court in Keith recognized that the Social Security Administration ("SSA") procedures dictate selecting an ME on a rotational basis, the court did not find any

evidence in the record that the ALJ did not follow the SSA procedures, and absent such evidence, the court determined there was not even the appearance of bias. See id.

Here, the record is unclear as to the process employed by the ALJ in selecting Dr. Witkind as the ME. A close reading of the transcript from the October 26, 2006 hearing provides some insight into the selection of Dr. Witkind as the ME. Specifically, during a discussion between the ALJ and Plaintiff's attorney about Plaintiff's treatment records, the ALJ stated, "I've decided after looking at some of these records here that I'll get input from a neurosurgeon– . . . –to see–and I'll call Dr. Witkind to testify. He's a board certified neurosurgeon." Tr. at 477. Although the ALJ did not state how he arrived at choosing Dr. Witkind, his statement can be interpreted in at least two ways. First, the ALJ may have meant that prior to that hearing, he had reviewed the evidence and determined that he wanted to seek the opinion of an ME. In doing so, the ALJ may have consulted the roster of qualified doctors, and Dr. Witkind's name may have been next on the list. This would explain how the ALJ spontaneously named Dr. Witkind as the ME during the October hearing.

Alternatively, the ALJ's statement could have meant that he had instantly decided that he wanted an ME to review the records and then named Dr. Witkind during the October 26, 2006 hearing. This would indicate that the ALJ may not have followed the procedure outlined in HALLEX, unless he had the current roster in front of him at the time or was familiar with the roster and knew ahead of time which ME in this field was next on the roster. If the ALJ named Dr. Witkind only because he was the most experienced and trusted doctor in the field, then it is possible that the ALJ did not follow the procedure outlined in HALLEX

for choosing an ME. Although the HALLEX procedures allow for some flexibility in choosing the ME–requiring the ALJ to choose from the roster "to the extent possible"–it would be improper to choose the same ME for every case without returning that ME to the bottom of the rotation. See HALLEX, § I-2-5-36(A), (D).

There is no evidence in the record that Plaintiff's substantial rights were affected by the selection of Dr. Witkind. Dr. Witkind testified that he was able to form a neutral and impartial opinion regarding Plaintiff's condition. Dr. Witkind was qualified to testify about Plaintiff's back condition because he is a board certified neurosurgeon. Additionally, Dr. Witkind testified that the Commissioner designated Dr. Witkind as someone qualified to offer a medical opinion in this type of case, indicating that Dr. Witkind was on the roster of doctors from which the ALJ selected him. Therefore, in the absence of evidence in the record demonstrating bias and due to the lack of a substantial right of Plaintiff being affected by the selection, the ALJ did not err in calling Dr. Witkind to testify at the hearing.

## V. Conclusion

The ALJ did not clearly articulate adequate reasons supported by substantial evidence for discounting the opinion of Dr. Vincenty, and the ALJ did not address Dr. Vincenty's July 26, 2007 letter. After thoroughly reviewing the entire record, the undersigned finds that the ALJ's decision is unsupported by substantial evidence. In accordance with the foregoing, it is

**ORDERED:**

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. §§ 405(g) as incorporated by 42 U.S.C. § 1383(c)(3) **REVERSING** the Commissioner's decision and **REMANDING** this matter with the following instructions:

    (A)    Reevaluate the evidence with respect to Dr. Vincenty's opinion, explicitly addressing Dr. Vincenty's July 26, 2007 letter, and state the weight Dr. Vincenty's opinion is given. If the ALJ decides to discount Dr. Vincenty's opinion, adequate reasons supported by substantial evidence should be clearly articulated.

    (B)    Reanalyze the weight given to Dr. Witkind's opinion in light of the analysis with respect to Dr. Vincenty's opinion.

2.    The Clerk is directed to close the file.

3.    If benefits are awarded on remand, Plaintiff's counsel shall have thirty (30) days from receiving notice of the amount of past due benefits to seek the Court's approval of attorney's fees pursuant to 42 U.S.C. § 406(b). See <u>Bergen v. Comm'r Soc. Sec.</u>, 454 F.3d 1273 (11th Cir. 2006).

**DONE AND ORDERED** at Jacksonville, Florida on September 30, 2009.

*James R. Klindt*
**JAMES R. KLINDT**
United States Magistrate Judge

jdf
Copies to:
Counsel of Record